Paul A. Traina, Esq. (SBN 155805)
ptraina@elllaw.com
Ian P. Samson, Esq. (SBN 279393)
isamson@elllaw.com
**ENGSTROM, LIPSCOMB & LACK**
A Professional Corporation
10100 Santa Monica Boulevard, 12th Floor
Los Angeles, California 90067-4113
Tel: (310) 552-3800 / Fax: (310) 552-9434

Dylan Ruga, Esq. (SBN 235969)
dylan@stalwartlaw.com
Ji-In Lee Houck, Esq. (SBN 280088)
jiin@stalwartlaw.com
**STALWART LAW GROUP**
1100 Glendon Avenue, 17th Floor
Los Angeles, California 90024
Tel: (310) 954-2000

Attorneys for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LOMELI, individually and on behalf of a class of similarly situated individuals,<br><br>                    Plaintiff,<br><br>          v.<br><br>JACKSON HEWITT, INC.; TAX SERVICES OF AMERICA, INC. d/b/a JACKSON HEWITT TAX SERVICE; CIVISTA BANCSHARES, INC.; CIVISTA BANK, N.A.; SANTA BARBARA TAX PRODUCTS GROUP, LLC; JJF & AC, INC. d/b/a Guanajuato Insurance Agency and Jackson Hewitt Tax Service; JUAN FLORES, an individual; and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No.:  2:17-cv-2899<br><br>**CLASS ACTION COMPLAINT**<br><br>**(1) RICO (18 U.S.C. § 1962(c))**<br>**(2) RICO (18 U.S.C. § 1962(d))**<br>**(3) NEGLIGENCE**<br>**(4) FRAUD**<br>**(5) CAL. BUS. & PROF. CODE § 17200,** *ET SEQ.*<br>**(6) CAL. BUS. & PROF. CODE § 17530.5**<br>**(7) CAL. CIVIL CODE § 1750** *ET SEQ.*<br>**(8) CAL. CIVIL CODE § 1798.80** *ET SEQ.*<br><br>**DEMAND FOR JURY TRIAL** |

1

**CLASS ACTION COMPLAINT**

Plaintiff Luis Lomeli brings this class action complaint against Defendants Jackson Hewitt, Inc., Tax Services of America, Inc., Civista Banchares, Inc., Civista Bank, Santa Barbara Tax Products Group, LLC, JJF & AC, Inc., Juan Flores, to stop Defendants' unlawful conduct and to obtain redress for all persons injured by Defendants' conduct.  For his class action complaint, Plaintiff alleges as follows based upon his personal knowledge and upon information and belief, including investigation conducted by his attorneys.

## PRELIMINARY STATEMENT

1.     Tax preparation is big business: By one count, revenue in 2018 is estimated to be $11 billion industry-wide.  Defendants are participants in that industry—for instance, Jackson Hewitt and its affiliated entities prepare federal and state tax returns for millions of Americans each year.  Central to that business is a simple act of trust: That the tax return Jackson Hewitt represents will be filed will in fact be filed with the authorities in that form, and that a consumer's personal information will not be used for anything other than filing an accurate tax return. Undoubtedly aware that trust is central to their business model, Jackson Hewitt repeatedly and systematically represented its trustworthiness to the public, assuring consumers that, if they used Jackson Hewitt to prepare their tax returns, they could count on "100% accuracy" and the protection of their private information.

2.     As alleged below, Defendants repeatedly and systematically violated that trust and used Plaintiff's identity to fraudulently obtain thousands of dollars from the Internal Revenue Service in Plaintiff's name.  As evidenced by the IRS's transcripts of the returns, which are different from the copy Defendants informed Plaintiff would be filed, Defendants altered Plaintiff's tax returns in several years in order to artificially decrease Plaintiff's tax liability.  That artificial deflation permitted Defendants to create the appearance that Plaintiff was owed a refund, which Defendants instructed the IRS (ostensibly on Plaintiff's behalf) to deposit into a bank account Defendants had created without Plaintiff's knowledge.  After extracting fees, Defendants caused

**CLASS ACTION COMPLAINT**

the issuance of a cashier's check for the balance of the ill-gotten refund, which was cashed without Plaintiff's knowledge or involvement.

3.     Plaintiff was kept in the dark for years, completely unaware that the tax returns he had authorized to be filed, and which Defendants represented would be filed, were instead replaced by doctored returns.   Plaintiff was also unaware of Defendants' other conduct until, in 2017, he investigated a discrepancy in the refund Defendants represented he was owed and the amount he actually received.   The discrepancy turned out to be Defendants' undisclosed and improper collection of fees from Plaintiff's refund amount, including double-dipping on a preparation fee Defendants had already charged Plaintiff.   But the investigation also unearthed processed cashier's checks Plaintiff had never seen or endorsed in amounts he was unaware he had "received."   Only then did Plaintiff understand that Defendants had appropriated his identity for several months to fraudulently obtain refunds from the IRS.

4.     On behalf of himself and the proposed class (as defined below), Plaintiff seeks an injunction requiring Defendants to cease the unlawful activities alleged herein and an award of damages to himself and all members of the class, together with the costs of suit and reasonable attorneys' fees.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction.   Pursuant to 28 U.S.C. § 1331, at least one cause of action arises from a federal statute.   Pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, this Court has jurisdiction because at least one class member is of diverse citizenship from one defendant, there are 100 or more class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.   Finally, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to all other claims because they are part of the same case or controversy.

419455

3

**CLASS ACTION COMPLAINT**

6.     This Court has personal jurisdiction over Defendants because Defendants do business in this District and a substantial number of the events giving rise to the claims alleged herein took place in California.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants do business in this District and a substantial number of the events giving rise to the claims alleged herein took place in this District.

## PARTIES

8.     Plaintiff Luis Lomeli is a citizen and resident of California who resides in Los Angeles County.  Like millions of other Americans, Plaintiff is obligated to file federal income tax returns each year.

9.     Defendant Jackson Hewitt, Inc., is a Virginia corporation with its principal place of business located in Jersey City, New Jersey.  Defendant Jackson Hewitt, Inc., operates a tax preparation business.  Defendant Jackson Hewitt, Inc., conducts business nationwide and is registered to do business in the State of California.

10.     Defendant Tax Services of America, Inc. is a Delaware corporation with its principal place of business located in Jersey City, New Jersey.  Defendant Tax Services of America, Inc., operates a tax preparation business and is one of Defendant Jackson Hewitt, Inc.'s subsidiaries.  Defendant Tax Services of America, Inc. conducts business nationwide and is registered to do business in the State of California.

11.     Defendant Civista Bancshares, Inc. is an Ohio financial holding company with its principal place of business in Sandusky, Ohio.  Defendant Civista Bancshares, Inc., operates through its subsidiary bank, Defendant Civista Bank.

12.     Defendant Civista Bank is a commercial bank organized under the laws of the State of Ohio with its principal place of business in Sandusky, Ohio.  On information and belief, Defendant Civista Bank was formerly known as "Citizens

Bank."  Defendant Civista Bank maintains bank accounts for Jackson Hewitt's "Assisted Refund" program and collects fees from consumers as a result.

13.    Defendant Santa Barbara Tax Products Group, LLC, is a Delaware limited liability company with its principal place of business in La Jolla, California. Defendant Santa Barbara Tax Products Group, LLC processes claims under Jackson Hewitt's "Assisted Refund" program and collects fees from consumers as a result. Defendant Santa Barbara Tax Products Group, LLC conducts business nationwide and is registered to do business in the State of California.

14.    Defendant JJF & AC, Inc., is a California corporation with its principal place of business in South Gate, California.  Defendant JJF & AC, Inc., in conjunction with other Defendants, operates the Jackson Hewitt location at 9212 California Avenue in South Gate, California.

15.    Defendant Juan Flores is, on information and belief, a citizen and resident of California.  Defendant Flores, in conjunction with other Defendants, controls JJF & AC, Inc., and operates the Jackson Hewitt location at 9212 California Avenue in South Gate, California.

16.    Plaintiff is unaware of the names, identities, or capacities of the defendants sued as Does 1-50, but is informed and believes and thereon alleges that each such fictitiously-named defendant is responsible in some manner for the damages and abridgement of rights described in this Complaint.  Plaintiff will amend his Complaint to state the true names, identities or capacities of such fictitiously-named defendants when ascertained.

## AGENCY ALLEGATIONS

17.    At all times relevant hereto, Defendants Jackson Hewitt, Inc. and/or Tax Services of America, Inc. ("Jackson Hewitt") had the right to and did control its franchised locations, including that operated by Defendant JJF & AC, Inc. at 9212 California Avenue in South Gate, California, as well as those locations' employees.

18.     Jackson Hewitt's franchise agreement provides Jackson Hewitt with the right to control all activities of any franchisees, including Defendant JJF & AC, Inc. For instance, the agreement provides that any Jackson Hewitt franchise "is governed by a Franchise Agreement and *must* be operated in accordance with our plan and system for preparing, checking and electronically filing income tax returns using our software, accounting methods, merchandising, equipment selection, advertising, promotional techniques, personnel training and quality standards…" (emphasis added).

19.     Jackson Hewitt's right to control its franchisees is not limited solely to protection of its trademarks, but includes the right to control all operations of the franchisees.  As alleged below, Jackson Hewitt controls nearly every aspect of its franchisees' operations—from overall business operations down to mandating where franchisees list their telephone numbers (they must "maintain both white and yellow page listings").

20.     Evidence demonstrating Jackson Hewitt's right to control its franchisee's operations includes, but is not limited to, the following:

a.  Jackson Hewitt mandates that franchisees "operate [their] business in full compliance with all our rules, specifications, standards and procedures, including, but not limited to, the Operating System, Operating Standards, Technology Standards and Marks Standards and any other requirements found in the Manual and any other materials [Jackson Hewitt] provide[s]."

b.  Jackson Hewitt is entitled to coerce compliance with its right to control franchisees' activities by imposing "fines."

c.  Jackson Hewitt mandates that franchisees "furnish, equip and upgrade [their] offices in accordance with the rules, specifications, and standards contained in the Manual" as developed by Jackson Hewitt.

419455

6

**CLASS ACTION COMPLAINT**

d. No franchisee may conduct any "advertising, promotional, and marketing activities" without Jackson Hewitt's "prior written approval," and any application to use such materials to which Jackson Hewitt does not respond within 15 days shall be "deemed disapproved." Further, even if Jackson Hewitt approves a particular advertisement, it can revoke that approval at any time, in which case a franchisee "must discontinue their use promptly."

e. Jackson Hewitt possesses an "absolute right" to use any marketing material developed by any franchisee for any purpose Jackson Hewitt wishes "without payment to [a franchisee] of any kind."

f. Jackson Hewitt must "review and approve" the location of any franchisee's business.

g. Jackson Hewitt mandates that franchisees attend required trainings, including initiation training and "update training."

h. Jackson Hewitt provides each franchisee with a "Confidential Operating Manual" containing "the required policies, procedures, and rules for the operation" of a Jackson Hewitt franchise. Jackson Hewitt reserves the right to change this Manual at any time, thereby forcing a change in the manner in which franchisees operate their business.

i. Jackson Hewitt requires that all franchisees must use their tax preparation software, and that use of any other software is forbidden absent Jackson Hewitt's "prior written consent."

j. Jackson Hewitt mandates the type of some electronic equipment franchisees must buy.

k. Jackson Hewitt restricts franchisees' operations to their designated territories.

l. Jackson Hewitt requires that franchisees "must offer" all of the products and services designated by Jackson Hewitt, and forbids

7

**CLASS ACTION COMPLAINT**

franchisees from offering any other financial product or service absent Jackson Hewitt's approval.  Further, franchisees may no longer offer a product if Jackson Hewitt discontinues it or revokes its approval.

m. Jackson Hewitt is permitted to set prices for products and services.

### FACTUAL ALLEGATIONS

**Plaintiff's 2014 Tax Return**

21.   In or about April 2015, Plaintiff visited the Jackson Hewitt location at 9212 California Avenue in South Gate, California for the purpose of preparing his income tax returns.  That Jackson Hewitt location owned, operated, and/or controlled by Defendants Jackson Hewitt, Inc., Tax Services of America, Inc., JJF & AC, Inc., and Juan Flores (collectively referred to hereafter as "Jackson Hewitt").  Jackson Hewitt charged Plaintiff an advance fee for preparation of the returns, and assigned Defendant Juan Flores to prepare Plaintiff's tax return.

22.   Plaintiff brought relevant documents to prepare his tax returns, including 1099s for his business and legitimate receipts for deductible expenses.  Based upon Plaintiff's legitimate reporting and preparation of the return, Jackson Hewitt determined that Plaintiff neither owed any further taxes nor was owed any refund. Plaintiff thereafter authorized the filing of the return in the form that was presented to him at the meeting.

23.   On April 15, 2015, Jackson Hewitt transmitted a letter to Plaintiff bearing Jackson Hewitt letterhead stating that Plaintiff's 2014 income tax return "has been completed and filed electronically with the IRS at the IRS Submission Processing Center."

24.   But the tax return Jackson Hewitt ultimately submitted to the IRS was materially different from the one Plaintiff authorized.   According to the IRS's transcripts for the return—which were based upon the content of the return submitted by Jackson Hewitt—the return Jackson Hewitt submitted contained inaccurate items unapproved by Plaintiff.   For example, although the return Plaintiff authorized

**CLASS ACTION COMPLAINT**

indicated that Plaintiff was not claiming any expenses for payment of wages during 2014, the IRS's transcripts indicate that the return Jackson Hewitt submitted claimed over $100,000 in wage-related expenses.  Until he discovered Jackson Hewitt's fraudulent conduct in 2017, Plaintiff was wholly unaware of the material differences in the return he had authorized and that which was submitted to the IRS.

25.    The effect of Jackson Hewitt's inaccurate return was to artificially reduce Plaintiff's tax liability by tens of thousands of dollars.  As a result, and based solely on the misrepresentations made by Jackson Hewitt, the IRS determined that Plaintiff was due a refund of $5,393.

26.    Plaintiff did not collect this refund; he was not even aware it was issued. Instead, unbeknownst to Plaintiff, Jackson Hewitt enrolled Plaintiff in its "Assisted Refund" program.  Under that program, Jackson Hewitt created a bank account for Plaintiff and directed the IRS (ostensibly on Plaintiff's behalf) to deposit the refund into that account.  Jackson Hewitt and Defendants Civista Banchares, Inc., Civista Bank, Santa Barbara Tax Products Group, LLC then collected further fees from the refund amount and, on or about May 5, 2015, caused a cashier's check to be issued to Plaintiff in the amount of $5,074.05.

27.    Plaintiff never received the cashier's check nor was aware of its existence.  Instead, Plaintiff's signature was forged as an endorsement on the check and the money taken without Plaintiff's knowledge.  On information and belief, Defendants, including any presently-unknown Doe defendant, forged Plaintiff's signature on the check and cashed it.  Plaintiff never received, endorsed, or collected any amount from this cashier's check.

**Plaintiff's 2015 Tax Return**

28.    Unaware of Defendants' fraudulent activities with respect to his 2014 taxes, on or about April 14, 2016, Plaintiff returned to the Jackson Hewitt location at 9212 California Avenue in South Gate, California to prepare his 2015 tax returns. Jackson Hewitt charged Plaintiff an advance fee of $390 for preparation of the returns,

which Plaintiff paid by cash, and again assigned Juan Flores to prepare Plaintiff's tax return.

29.    Plaintiff again presented with relevant documents to prepare his tax return, including 1099s for his business and legitimate receipts for deductible expenses.  Based upon Plaintiff's legitimate reporting and preparation of the return, Jackson Hewitt determined that Plaintiff was owed a refund of $56, but advised Plaintiff that he would not receive that refund because of additional fees.  Plaintiff thereafter authorized the filing of the return in the form that was presented to him at the meeting.

30.    But the tax return Jackson Hewitt ultimately submitted to the IRS was again materially different from the one Plaintiff authorized.  According to the IRS's transcripts for the return—which were based upon the content of the return submitted by Jackson Hewitt—the return Jackson Hewitt submitted contained inaccurate items unapproved by Plaintiff.  For example, as with Plaintiff's 2014 return, the IRS's transcripts indicate that the return Jackson Hewitt submitted claimed over $100,000 in wage-related expenses even though the return Plaintiff authorized to be filed indicated that Plaintiff had incurred no wage-related expenses.  Until he discovered Jackson Hewitt's fraudulent conduct in 2017, Plaintiff was wholly unaware of the material differences in the return he had authorized and that which was submitted to the IRS.

31.    The effect of Jackson Hewitt's inaccurate return was to artificially reduce Plaintiff's tax liability by tens of thousands of dollars.  As a result, and based solely on the misrepresentations made by Jackson Hewitt, the IRS determined that Plaintiff was due a refund of $6,514.

32.    Plaintiff did not collect this refund; he was not even aware it was issued.  Instead, unbeknownst to Plaintiff, Jackson Hewitt again used Plaintiff's unwitting enrollment in their "Assisted Refund" program to collect the refund they artificially created for Plaintiff.  After receiving the refund in that account, Jackson Hewitt and Defendants Civista Banchares, Inc., Civista Bank, Santa Barbara Tax Products Group,

LLC collected further fees from the refund amount and, on or about May 3, 2016, caused a cashier's check to be issued to Plaintiff in the amount of $6,210.05.

33.     Plaintiff never received the cashier's check nor was aware of its existence.  Instead, Plaintiff's signature was forged as an endorsement on the check and the money taken without Plaintiff's knowledge.  On information and belief, Defendants, including any presently-unknown Doe defendant, forged Plaintiff's signature on the check and cashed it.  Plaintiff never received, endorsed, or collected any amount from this cashier's check.

**Plaintiff's 2016 Tax Return**

34.     Once again unaware of the Defendants' conduct, on or about February 13, 2017, Plaintiff returned to the Jackson Hewitt location at 9212 California Avenue in South Gate, California to prepare his 2016 tax returns.  Jackson Hewitt charged Plaintiff an advance fee of $470 for preparation of the returns, which Plaintiff paid by debit card, and Juan Flores again prepared Plaintiff's returns.

35.     Plaintiff again presented with relevant documents to prepare his tax return, including 1099s for his business and legitimate receipts for deductible expenses.  Based upon Plaintiff's legitimate reporting and preparation of the return, Jackson Hewitt determined that Plaintiff was owed a refund of $4,523.  Jackson Hewitt did not advise Plaintiff, however, that he would receive his refund through Jackson Hewitt's "Assisted Refund" program, or that fees would be deducted from the return.

36.     On or about March 1, 2017, Plaintiff received a cashier's check from Civista Bank in the amount of $4,228.05—nearly $300 less than the refund amount Jackson Hewitt informed Plaintiff was due.  This was the first time Plaintiff learned that an account had been opened for him at Civista Bank.

37.     Seeking to determine the discrepancy in the refund, Plaintiff contacted the bank.  For the first time, Plaintiff learned that Defendants had withdrawn several fees from his refund amount: a $32.95 "account handler fee"; a $17 "transmittal fee";

and a $330 "amount paid to tax preparer."  Further, Plaintiff's refund amount was listed at $4,608, which was $85 more than Plaintiff had been advised.  (It was not until Plaintiff obtained his transcripts from the IRS that he discovered that Jackson Hewitt had again modified his return before filing it.)

38.    Although Defendants charged Plaintiff nearly $400 in fees for their "service," the "Assisted Refund" program was wholly worthless to Plaintiff.  The IRS provides direct deposit to any bank account, not just those set up by tax preparers.  And since Jackson Hewitt charged Plaintiff in advance for preparation of his tax returns, their imposition of an additional, undisclosed, and unearned $330 fee was improper.

39.    Plaintiff's investigation also uncovered cashier's checks from tax years 2014 and 2015—described above—of which Plaintiff was previously unaware.  Further, Plaintiff learned that the checks had been endorsed purportedly by him, and that they had been cashed in his name.  That was the first time Plaintiff learned of the cashier's checks or the refunds from the IRS in tax years 2014 and 2015.

**Jackson Hewitt's Representations to Plaintiff and Class Members**

40.    Throughout the relevant period, Jackson Hewitt repeatedly and systematically represented to the general public, including Plaintiff and class members, that could be counted upon to accurately prepare tax returns.

41.    For instance, Jackson Hewitt purported to hold its representatives to the "Preparer's Pledge," including a "guarantee" that tax returns prepared by Jackson Hewitt would be "100% accurate":



**CLASS ACTION COMPLAINT**

42.     Similarly, in or around 2015, Jackson Hewitt's CEO, David Prokupek, stated the following about Jackson Hewitt's services:

> We know our stuff.  We've seen it all, and **you can trust us to get your taxes done right**—from the simple to the complex with **100% accuracy guaranteed**.

43.     Jackson Hewitt created marketing materials for placement in its locations containing the same statements concerning "trust" and "100% accuracy."

44.     Jackson Hewitt's website contains other "promises" and "pledges" to consumers about the accuracy of tax returns entrusted to Jackson Hewitt for preparation and filing.



45.     Jackson Hewitt's website contains a similar representation from Mr. Prokupek, stating that Jackson Hewitt will "make the tax code work" for consumers:



46.     Jackson Hewitt ran advertisements during the relevant time period stating that its employees were "certified tax pros" who "certifiably know [their] stuff" when it came to preparing tax returns.   These same advertisement reiterated Jackson Hewitt's "100% accuracy" pledge.

47.     However, during the relevant time period, Jackson Hewitt received thousands of complaints that tax returns it had prepared were inaccurate.   On information and belief, at least some of those complaints were premised upon the manipulation of tax returns in the manner described herein.

48.     Another Jackson Hewitt advertisement contains a "real tax pro" discussing the company's purported commitment to "privacy" for consumers' information as follows:

> The complexity of the IRS and the changing tax codes and issues…
> the ***security of people's information***, and their privacy—***that aspect is***
> ***very, very important to Jackson Hewitt***.  Although a lot of companies
> in this industry do not take that privacy as their ***number one priority***,
> so ***we're happy to separate ourselves*** from the "mom and pops" who
> store people's sensitive information in their garage and they go to
> Hawaii…  Well, you want to get connected with our website,
> JacksonHewitt.com; that site will direct you to a main office…

## CLASS ACTION ALLEGATIONS

49.     As noted above, Plaintiff brings this action on behalf of himself and nationwide classes, defined as indicated below.  The foregoing classes are designed to be:

> **The "Manipulated Return" Class:** All persons in the United States
> and its territories who had their tax returns prepared by Jackson
> Hewitt in which Defendants artificially created a refund by
> manipulating the tax return without the taxpayer's consent.

14
**CLASS ACTION COMPLAINT**

**The "Undisclosed Fees" Class:** All persons in the United States and its territories who had their tax returns prepared by Jackson Hewitt and from whom Defendants charged undisclosed fees as part of the "Assisted Refund" program.

50.    Upon information and belief, there are hundreds, if not thousands, of members of each class.  Joinder of all members is therefore impracticable.

51.    Common questions of law and fact exist as to all members of each class such that those questions predominate over questions affecting Plaintiff or individual class members.    These common questions include, but are not limited to, the following:

a.    Did Defendants manipulate Plaintiff and class members' tax returns?

b.    Did Defendants file manipulated tax returns with the IRS on behalf of Plaintiff and class members?

c.    Did Defendants generate an artificial, undisclosed refund for Plaintiff and class members as a result of their manipulation of Plaintiff's and class members' tax returns?

d.    Did Defendants open bank accounts for the collection of tax refunds on behalf of Plaintiff and class members?

e.    Did Defendants oversee the deposit of tax refund amounts purportedly due to Plaintiff and class members into those accounts?

f.    Did Defendants extract fees from refund amounts deposited into the "Assisted Refund" accounts?

g.    Did Defendants disclose the fees they charged from "Assisted Refund" accounts?

h.    Did Defendants double-charge participants in the "Assisted Refund" program by collecting "tax preparation" fees prior to

preparing the tax return and from the refund amount deposited in the "Assisted Refund" account?

i.    Should the Court enjoin Defendants from engaging in such conduct in the future?

j.    Are Plaintiff and class members entitled to other relief, including all available damages, disgorgement, or equitable relief?

52.    In engaging in the conduct described herein, Defendants have acted and failed to act on grounds generally applicable to Plaintiff and other class members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward class members and to make injunctive or corresponding declaratory relief appropriate for all class members.

53.    The factual and legal bases of Defendants' liability to Plaintiff and each class member are substantially similar, resulting in injury to Plaintiff and each class member as a result of Defendants' actions as described herein.

54.    Plaintiff will fairly and adequately represent and protect the interests of other class members.  Plaintiff has retained counsel with substantial experience in litigating complex cases, including class actions.  Both Plaintiff and his counsel will vigorously prosecute this action on behalf of the class and have the financial ability to do so.  Neither Plaintiff nor counsel has any interest adverse to other class members.

55.    Most class members would find the costs of litigating their claims prohibitive and therefore would have no effective remedy without a class action. Further, class treatment of common questions of law and fact is superior to multiple, individual litigation or piecemeal adjudication because it preserves the resources of the courts and litigants as well as promotes consistent and efficiency of adjudication.

///

///

///

///

# FIRST CAUSE OF ACTION

## On Behalf of the Manipulated Returns Class

## Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;

## JJF & AC, Inc.; and Juan Flores

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

## (18 U.S.C. § 1962(c))

56.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

57.     Plaintiff asserts this cause of action on behalf of himself and members of the class.

58.     This Count is brought against Defendants Jackson Hewitt, Inc., Tax Services of America, Inc., JJF & AC, Inc., and Juan Flores, who are referred to collectively as the "RICO Defendants."

59.     The RICO Defendants operated an "enterprise" within the meaning of RICO to prepare federal and state income tax returns, activities which affected interstate commerce.  The RICO Defendants are employed by or associated with the enterprise.

60.     The RICO Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauded Plaintiff and others.  As set forth above, the RICO Defendants manipulated Plaintiff's tax returns to artificially create a refund, which the RICO Defendants thereafter remitted to themselves.  Plaintiff is informed and believes that the RICO Defendants undertook the same pattern of activity with respect to members of the class.

61.     Pursuant to and in furtherance of their fraudulent scheme, the RICO Defendants committed multiple, related acts of "racketeering" as defined by 18 U.S.C. § 1961(1), including mail fraud and wire fraud.  The RICO Defendants had a plan or scheme to defraud Plaintiff and class members by manipulating their tax returns,

intended to use their tax returns as such, intended to use the mail and wires to accomplish that scheme, and in fact used the mail and/or wires to accomplish the scheme.

62.     The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

63.     As a direct and proximate result of the RICO Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff and class members have been injured, including the unauthorized appropriation of their identity to generate false income tax refunds and the imposition of undisclosed fees.

64.     Accordingly, Plaintiff seeks, for both himself and class members, all applicable damages provided by RICO, as well as payment of attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### On Behalf of the Manipulated Returns Class

### Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;

### JJF & AC, Inc.; and Juan Flores

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## (18 U.S.C. § 1962(d))

65.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

66.     Plaintiff asserts this cause of action on behalf of himself and members of the class.

67.     This Count is brought against Defendants Jackson Hewitt, Inc., Tax Services of America, Inc., JJF & AC, Inc., and Juan Flores, who are referred to collectively as the "RICO Defendants."

68.     As set forth above, the RICO Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).  The RICO Defendants have intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise alleged herein

through a pattern of racketeering activity. The RICO Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described herein. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

69.    As a direct and proximate result of the RICO Defendants' racketeering activities and violations of 18 U.S.C. § 1962(d), Plaintiff and class members have been injured, including the unauthorized appropriation of their identity to generate false income tax refunds and the imposition of undisclosed fees.

70.    Accordingly, Plaintiff seeks, for both himself and class members, all applicable damages provided by RICO, as well as payment of attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### On Behalf of the Manipulated Returns Class

### Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;

### JJF & AC, Inc.; and Juan Flores

### NEGLIGENCE

71.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

72.    Plaintiff asserts this cause of action on behalf of himself and members of the class.

73.    Defendants owed Plaintiff and class members a duty of reasonable care. For instance, Defendants knew or should have known that Plaintiff and class members were relying on Defendants to submit accurate income tax refunds.

74.    As described herein, Defendants breached that duty.

75.    Defendants' breaches of duty proximately caused harm to Plaintiff and class members.

///

419455

19

**CLASS ACTION COMPLAINT**

76.     Defendants, and each of them, are vicariously liable for each other's activities in furtherance of the unlawful scheme described herein.

77.     As a direct and proximate cause of Defendants' negligence, carelessness, and violation of law, Plaintiff and class members Plaintiff and class members suffered and will continue to suffer damages.

## FOURTH CAUSE OF ACTION

### On Behalf of the Manipulated Returns Class

### Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;

### JJF & AC, Inc.; and Juan Flores

## FRAUD

78.     Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

79.     Plaintiff asserts this cause of action on behalf of himself and members of the class.

80.     Defendants made or caused one another to make false and misleading representations to Plaintiffs and class members concerning their tax returns, including that the returns would be and were filed as authorized by Plaintiff and class members.

81.     These representations were false when made because Defendants had or intended to submit manipulated tax returns on behalf of Plaintiff and class members in furtherance of Defendants' scheme.  These representations were material because they induced Plaintiff and class members to entrust preparation and submission of their tax returns to Defendants.

82.     Defendants failed to disclose that they had and intended to manipulate Plaintiff's and class members' tax returns.  Defendants had a legal duty to disclose those facts because, *inter alia*, they had a position of influence and superiority over Plaintiffs and class members.

83.     Defendants knew that their representations were false because they knew that the tax returns they provided to Plaintiff and class members, and which Plaintiff

1  and class members authorized to be filed, were not, in fact, the versions of the tax
2  returns Defendants intended to file, or the ones that were actually filed with the IRS.

3      84.   Plaintiff and class members acted in justifiable reliance on Defendants'
4  misrepresentations and omissions by permitting Defendants to prepare and file their
5  tax returns.  Defendants held themselves out as tax preparation professionals and
6  represented to Plaintiff and class members that they would submit the version of the
7  return Plaintiff and class members authorized.  Plaintiff and class members acted in
8  the manner that a reasonably prudent person would have acted under the
9  circumstances.

10     85.   Had Plaintiff and class members known that Defendants intended to
11 appropriate their identities to obtain fraudulent refunds, Plaintiff and class members
12 would not have permitted Defendants to prepare and submit their tax returns.

13     86.   As a direct and proximate result of Defendants' fraudulent
14 misrepresentations and failures to disclose, Plaintiff and class members suffered and
15 will continue to suffer damages.

16 

**FIFTH CAUSE OF ACTION**

17 **On Behalf of the Manipulated Returns Class**

18 **Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;**

19 **JJF & AC, Inc.; and Juan Flores**

20 **VIOLATION OF CALIFORNIA BUS. AND PROF. CODE SECTION 17200**

21     87.   Plaintiff hereby incorporates by reference the foregoing allegations as if
22 fully set forth herein.

23     88.   Plaintiff asserts this cause of action on behalf of himself and members of
24 the Manipulated Returns Class.

25     89.   California's Unfair Competition Law, codified at Business and
26 Professions Code section 17200, *et seq.*, protects consumers by promoting fair
27 competition.  As such, it is interpreted broadly and provides a cause of action for any

28

21

**CLASS ACTION COMPLAINT**

unlawful, unfair, or fraudulent business act or practice that causes injury to consumers.

90.    Defendants engage in substantial marketing and business in California.

91.    Defendants' acts and practices, as described herein, constitute unlawful, fraudulent, or unfair business practices, in that (1) Defendants' conduct violated numerous statutes, including, but not limited to, 26 U.S.C. section 7206(1), California Penal Code section 470, and other statutes enumerated herein; (2) there is no legitimate justification for Defendants' conduct; (3) Defendants' conduct is immoral, unethical, oppressive, unconscionable, or substantially injurious to Plaintiff and class members; and/or (4) Defendants' conduct has a tendency to deceive Plaintiff and class members.

92.    Defendants' unlawful, unfair, and fraudulent business acts and practices, as described above, include, but are not limited to, the unauthorized appropriation of Plaintiff's and class members' identity to generate false income tax refunds.

93.    Plaintiff and class members have been damaged by these practices.

94.    Defendants' conduct, as described herein, violates California's Unfair Competition Law and other similar state unfair competition and unlawful business practice statutes.

## SIXTH CAUSE OF ACTION
### On Behalf of the Manipulated Returns Class
### Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;
### JJF & AC, Inc.; and Juan Flores
## VIOLATION OF CALIFORNIA BUS. AND PROF. CODE SECTION 17530.5

95.    Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

96.    Plaintiff asserts this cause of action on behalf of himself and California members of the Manipulated Returns Class.

97.    Plaintiff brings this cause of action pursuant to Business and Professions Code section 17535.  That provision allows "any person who has suffered injury in fact and has lost money or property" to bring a civil action for violations of "this chapter," referring to Business and Professions Code Division 7, Part 3, Chapter 1. Business and Professions Code section 17530.5 is included within Business and Professions Code Division 7, Part 3, Chapter 1.

98.    Defendants are, and, at all times relevant to this complaint, were, engaged in the "business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns" within the meaning of Business and Professions Code section 17530.5(b).

99.    Business and Professions Code section 17530.5 prohibits the use or disclosure of "any information obtained in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns."  Defendants violated Business and Professions Code section 17530.5 by, *inter alia*, using Plaintiff and class members' information to obtain fraudulent refunds from the IRS and to open bank accounts for Plaintiff and class members without their consent or knowledge.

100.    Defendants are each "subsidiaries or affiliates" of one another within the meaning of Business and Professions Code sections 17530.5(c) and (d).

101.    As a result of Defendants' unlawful conduct alleged herein, Plaintiff suffered injury in fact and has lost money and property.  Had Plaintiff known of Defendants' conduct, he would not have used them to prepare his tax returns.

102.    As a direct and proximate result of Defendants' conduct, Defendants have received, continue to receive, and continue to hold unlawfully obtained property and money, and have profited from their unlawful acts as alleged herein.

103.    Pursuant to Business and Professions Code section 17535, Plaintiff, on behalf of Class Members and the general public, seeks restitution and disgorgement of all earnings, profits, compensation and benefit obtained by Defendants as a result of

the unlawful practices described herein in violation of Business and Professions Code section 17530.5.

104.   Defendants continue to utilize the unlawful business practices alleged herein.  Thus, and pursuant to Business and Professions Code section 17535, Plaintiff further seeks an Order from this Court enjoining Defendants, and each of them, from continuing to engage in the unlawful practices alleged herein.  The general public will be irreparably harmed if such an Order is not granted.

105.   Plaintiff has assumed the responsibility of enforcing the laws and public policies specified herein by suing on his own behalf and on behalf of other similarly-situated class members.  Plaintiff's action will enforce important rights affecting the public interest, including the Legislature's express intent in enacting Business and Professions Code sections 17530.5 and 17535.  Plaintiff will incur a financial burden in pursuing this action in furtherance of the public interest.   Thus, an award of attorneys' fees to Plaintiff is appropriate pursuant to California Code of Civil Procedure section 1021.5.

## SEVENTH CAUSE OF ACTION

**On Behalf of California Members of the Manipulated Returns Class**

**Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;**

**JJF & AC, Inc.; and Juan Flores**

## VIOLATION OF THE CALIFORNIA LEGAL REMEDIES ACT

106.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

107.   Plaintiff asserts this cause of action on behalf of himself and California members of the Manipulated Returns Class, all of whom are "consumers" within the meaning of Civil Code section 1761(d) and section 1770.

108.   Defendants' representations, omissions and conduct have violated, and continue to violate, California's Consumer Legal Remedies Act ("CLRA"), because

24

**CLASS ACTION COMPLAINT**

they extend to transactions that are intended to result, or which have resulted, in the sale of services to consumers, including Plaintiff and class members.

109.    Defendants' conduct violates the CLRA, Civil Code section 1770(16), which prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."  Specifically, Defendants represented that they would file the tax returns Plaintiff approved, but they instead filed different, manipulated returns in furtherance of their fraudulent refund scheme.

110.    Defendants' tax preparation services are "services" within the meaning of Civil Code section 1761(b) and section 1770.

111.    Defendants' provision of tax preparation services to Plaintiff and class members each constituted a "transaction" within the meaning of Civil Code section 1761(e) and section 1770.

112.    Defendants' conduct is ongoing and, unless restrained, likely to recur.

113.    Plaintiff, on behalf of himself and class members, seeks injunctive relief prohibiting Defendants from engaging in the misconduct described herein.

114.    No relief of any other kind, other than injunctive relief, is currently sought pursuant to this CLRA cause of action.  No damages of any kind are currently sought pursuant to this CLRA cause of action.

115.    Pursuant to Civil Code section 1782(a), Plaintiff will provide Defendants with notice of their CLRA violations by certified mail return receipt requested.  If Defendants fail to provide appropriate relief for the CLRA violations, Plaintiff will amend this complaint to seek damages and other relief under the CLRA on his own behalf and on behalf of the class.

116.    Pursuant to Civil Code section 1780(d), Plaintiff includes the requisite venue declaration as an exhibit to this complaint.

///

///

///

**EIGHTH CAUSE OF ACTION**

**On Behalf of California Members of the Manipulated Returns Class**

**Against Jackson Hewitt, Inc.; Tax Services of America, Inc.; and JJF & AC, Inc.**

**VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT**

117.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

118.   Plaintiff asserts this cause of action on behalf of himself and California members of the class.

119.   Defendants Jackson Hewitt, Inc., Tax Services of America, Inc., and JJF & AC, Inc., are each a "business" as defined by Civil Code section 1798.80(a).

120.   Plaintiff and each class member is an "individual" as defined by Civil Code section 1798.80(d) and a "customer" as defined by Civil Code section 1798.80(c).

121.   The information Defendants used to for the acts described herein was "personal information" as defined by Civil Code sections 1798.80(e) and 1798.81.5(d), which includes "information that identified, relates to, describes, or is capable of being associated with, a particular individual, including, but not limited to, his or her name, signature, Social Security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information."

122.   The misuse of Plaintiff's and class members' personal information by Defendants to perform the acts described herein was a "breach of the security system" as defined by Civil Code section 1798.82(g).

123.   By failing to immediately notify all affected consumers that their personal information had been misused, Defendants violated Civil Code section

26

**CLASS ACTION COMPLAINT**

1798.82.  Defendants' failure to immediately notify customers of the misuse caused Plaintiff and class members to suffer damages by having their identities used to fraudulently obtain refunds from the IRS, which may potentially require Plaintiff and class members to correct their filings and/or incur penalties or interest.

**NINTH CAUSE OF ACTION**

**On Behalf of the Undisclosed Fees Class**

**Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;**

**JJF & AC, Inc.; and Juan Flores**

**NEGLIGENCE**

124.  Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

125.  Plaintiff asserts this cause of action on behalf of himself and members of the class.

126.  Defendants owed Plaintiff and class members a duty of reasonable care. For instance, Defendants knew or should have known that Plaintiff and class members were relying on Defendants to provide all required information concerning the fees charged for their services.

127.  As described herein, Defendants breached that duty.

128.  Defendants' breaches of duty proximately caused harm to Plaintiff and class members.

129.  Defendants, and each of them, are vicariously liable for each other's activities in furtherance of the unlawful scheme described herein.

130.  As a direct and proximate cause of Defendants' negligence, carelessness, and violation of law, Plaintiff and class members Plaintiff and class members suffered and will continue to suffer damages.

///

///

///

**TENTH CAUSE OF ACTION**

**On Behalf of the Undisclosed Fees Class**

**Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;**

**JJF & AC, Inc.; and Juan Flores**

**FRAUD**

131.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

132.   Plaintiff asserts this cause of action on behalf of himself and members of the class.

133.   Defendants failed to disclose that they had and intended to enroll Plaintiff and class members in the "Assisted Refund" program and charge Plaintiff and class members fees, including double-charging for tax preparation services.   Defendants had a legal duty to disclose those facts because, *inter alia*, they had a position of influence and superiority over Plaintiffs and class members.

134.   Plaintiff and class members acted in justifiable reliance on Defendants' misrepresentations and omissions by permitting Defendants to prepare and file their tax returns.   Defendants held themselves out as tax preparation professionals and represented to Plaintiff and class members that they would submit the version of the return Plaintiff and class members authorized.   Plaintiff and class members acted in the manner that a reasonably prudent person would have acted under the circumstances.

135.  Had Plaintiff and class members known that Defendants intended to charge them undisclosed fees, Plaintiff and class members would not have permitted Defendants to prepare and submit their tax returns.

136.  As a direct and proximate result of Defendants' fraudulent misrepresentations and failures to disclose, Plaintiff and class members suffered and will continue to suffer damages.

///

**CLASS ACTION COMPLAINT**

## ELEVENTH CAUSE OF ACTION

### On Behalf of the Undisclosed Fees Class

### Against All Defendants

## VIOLATION OF CALIFORNIA BUS. AND PROF. CODE SECTION 17200

137.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

138.   Plaintiff asserts this cause of action on behalf of himself and members of the Undisclosed Fees Class.

139.   As alleged above, California's Unfair Competition Law protects consumers by promoting fair competition and is interpreted broadly to provide a cause of action for any unlawful, unfair, or fraudulent business act or practice that causes injury to consumers.

140.   Defendants engage in substantial marketing and business in California.

141.   Defendants' acts and practices, as described herein, constitute unlawful, fraudulent, or unfair business practices, in that (1) Defendants' conduct violated numerous statutes; (2) there is no legitimate justification for Defendants' conduct; (3) Defendants' conduct is immoral, unethical, oppressive, unconscionable, or substantially injurious to Plaintiff and class members; and/or (4) Defendants' conduct has a tendency to deceive Plaintiff and class members.

142.   Defendants' unlawful, unfair, and fraudulent business acts and practices, as described above, include, but are not limited to, the undisclosed imposition of fees on Plaintiff and class members' refunds through the "Assisted Refund" program.

143.   Defendants' conduct was further unlawful because it violated the Truth in Savings Act ("TISA").   Congress enacted TISA to require, *inter alia*, full disclosure of fees applicable to consumer depository accounts.  12 U.S.C. § 4301.  To further that goal, TISA mandates that "before an account is opened or a service is rendered," a financial institution must provide a potential customer with a schedule of interest rates and fees applicable to the account or service.  12 U.S.C. § 4305.

1       144.   Defendants failed to provide Plaintiff and class members with any of the

2   materials required by TISA when opening the bank accounts noted herein.

3       145.   Further, Defendants failed to advise Plaintiff and class members of the

4   applicable fees as required by TISA.

5       146.   Plaintiff and class members have been damaged by these practices.

6       147.   Defendants' conduct, as described herein, violates California's Unfair

7   Competition Law and other similar state unfair competition and unlawful business

8   practice statutes.

9                     **TWELFTH CAUSE OF ACTION**

10       **On Behalf of California Members of the Undisclosed Fees Class**

11        **Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;**

12              **JJF & AC, Inc.; and Juan Flores**

13      **VIOLATION OF THE CALIFORNIA LEGAL REMEDIES ACT**

14      148.   Plaintiff hereby incorporates by reference the foregoing allegations as if

15  fully set forth herein.

16      149.   Plaintiff asserts this cause of action on behalf of himself and California

17  members of the Undisclosed Fees Class, all of whom are "consumers" within the

18  meaning of Civil Code section 1761(d) and section 1770.

19      150.   Defendants' representations, omissions and conduct have violated, and

20  continue to violate, the CLRA, because they extend to transactions that are intended to

21  result, or which have resulted, in the sale of services to consumers, including Plaintiff

22  and class members.

23      151.   Defendants' conduct violates the CLRA, Civil Code section 1770(14),

24  which prohibits "[r]epresenting that a transaction confers or involves rights, remedies,

25  or obligations that it does not have or involve, or that are prohibited by law."

26  Specifically, Defendants represented that they were entitled to charge Plaintiff

27  unauthorized fees as described above when, in fact, they were not.

28  ///

                                               

**CLASS ACTION COMPLAINT**

152.   Defendants' tax preparation services are "services" within the meaning of Civil Code section 1761(b) and section 1770.

153.   Defendants' provision of tax preparation services to Plaintiff and class members each constituted a "transaction" within the meaning of Civil Code section 1761(e) and section 1770.

154.   Defendants' conduct is ongoing and, unless restrained, likely to recur.

155.   Plaintiff, on behalf of himself and class members, seeks injunctive relief prohibiting Defendants from engaging in the misconduct described herein.

156.   No relief of any other kind, other than injunctive relief, is currently sought pursuant to this CLRA cause of action.  No damages of any kind are currently sought pursuant to this CLRA cause of action.

157.   Pursuant to Civil Code section 1782(a), Plaintiff will provide Defendants with notice of their CLRA violations by certified mail return receipt requested.   If Defendants fail to provide appropriate relief for the CLRA violations, Plaintiff will amend this complaint to seek damages and other relief under the CLRA on his own behalf and on behalf of the class.

158.   Pursuant to Civil Code section 1780(d), Plaintiff includes the requisite venue declaration as an exhibit to this complaint.

<u>**THIRTEENTH CAUSE OF ACTION**</u>

**On Behalf California Members of the Undisclosed Fees Class**

**Against Jackson Hewitt, Inc.; Tax Services of America, Inc.;**

**JJF & AC, Inc.; and Juan Flores**

<u>**VIOLATION OF CALIFORNIA BUS. AND PROF. CODE SECTION 17530.5**</u>

159.   Plaintiff hereby incorporates by reference the foregoing allegations as if fully set forth herein.

160.   Plaintiff asserts this cause of action on behalf of himself and California members of the Undisclosed Fees Class.

///

161.   Plaintiff brings this cause of action pursuant to Business and Professions Code section 17535.  That provision allows "any person who has suffered injury in fact and has lost money or property" to bring a civil action for violations of "this chapter," referring to Business and Professions Code Division 7, Part 3, Chapter 1. Business and Professions Code section 17530.5 is included within Business and Professions Code Division 7, Part 3, Chapter 1.

162.  Defendants are, and, at all times relevant to this complaint, were, engaged in the "business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns" within the meaning of Business and Professions Code section 17530.5(b).

163.   Business and Professions Code section 17530.5 prohibits the use or disclosure of "any information obtained in the business of preparing federal or state income tax returns or assisting taxpayers in preparing those returns."  Defendants violated Business and Professions Code section 17530.5 by, *inter alia*, using Plaintiff and class members' information to obtain fraudulent refunds from the IRS and to open bank accounts for Plaintiff and class members without their consent or knowledge.

164.   Defendants are each "subsidiaries or affiliates" of one another within the meaning of Business and Professions Code sections 17530.5(c) and (d).

165.   As a result of Defendants' unlawful conduct alleged herein, Plaintiff suffered injury in fact and has lost money and property.  Had Plaintiff known of Defendants' conduct, he would not have used them to prepare his tax returns.

166.   As a direct and proximate result of Defendants' conduct, Defendants have received, continue to receive, and continue to hold unlawfully obtained property and money, and have profited from their unlawful acts as alleged herein.

167.   Pursuant to Business and Professions Code section 17535, Plaintiff, on behalf of Class Members and the general public, seeks restitution and disgorgement of all earnings, profits, compensation and benefit obtained by Defendants as a result of

**CLASS ACTION COMPLAINT**

1  the unlawful practices described herein in violation of Business and Professions Code
2  section 17530.5.

3       168.   Defendants continue to utilize the unlawful business practices alleged
4  herein.  Thus, and pursuant to Business and Professions Code section 17535, Plaintiff
5  further seeks an Order from this Court enjoining Defendants, and each of them, from
6  continuing to engage in the unlawful practices alleged herein.  The general public will
7  be irreparably harmed if such an Order is not granted.

8       169.   Plaintiff has assumed the responsibility of enforcing the laws and public
9  policies specified herein by suing on his own behalf and on behalf of other similarly-
10 situated class members.  Plaintiff's action will enforce important rights affecting the
11 public interest, including the Legislature's express intent in enacting Business and
12 Professions Code sections 17530.5 and 17535.  Plaintiff will incur a financial burden
13 in pursuing this action in furtherance of the public interest.   Thus, an award of
14 attorneys' fees to Plaintiff is appropriate pursuant to California Code of Civil
15 Procedure section 1021.5.

16

17                          **PRAYER FOR RELIEF**

18       WHEREFORE, Plaintiff, individually and on behalf of the class, prays for the
19 following relief:

20       1.    For an order certifying the classes as defined above, appointing Plaintiff
21             as class representative for each class, and appointing Plaintiff's counsel
22             as class counsel for each class;

23       2.    For an order declaring Defendants' actions to be unlawful;

24       3.    For equitable relief to Plaintiff and class members;

25       4.    For injunctive relief prohibiting Defendants from engaging in the
26             misconduct described herein;

27       5.    For an award of all recoverable compensatory, statutory, and other
28             damages  sustained  by  Plaintiff  and  class  members,  including

disgorgement, unjust enrichment, and all other available relief under applicable law;

6. For an award of treble damages pursuant to 18 U.S.C. § 1964(c) and any other applicable law;

7. For an award of punitive damages pursuant to applicable law;

8. For reasonable attorney's fees and expenses as permitted by applicable statutes and law, including, but not limited to, Code of Civil Procedure section 1021.5;

9. For taxable costs;

10. For pre and post-judgment interest as allowed by law; and

11. For any other relief the Court deems just.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that are so triable.

Dated:  April 17, 2017                    ENGSTROM, LIPSCOMB & LACK
                                          STALWART LAW GROUP


                                          By:  _/s/ Paul A. Traina_____
                                                 Paul A. Traina, Esq.
                                                 Ian P. Samson, Esq.

                                                 Dylan Ruga, Esq.
                                                 Ji-In Lee Houck, Esq.

                                                 *Attorneys for Plaintiff and the Proposed Class*

34

**CLASS ACTION COMPLAINT**

## **DECLARATION OF LUIS LOMELI**

I, LUIS LOMELI, hereby declare that:

1.     I am over 18 years of age and am competent to make this declaration.  I have personal knowledge of the facts stated in this declaration and could competently testify thereto if called upon to do so.

2.     I am the named Plaintiff in this case.

3.     For the tax services described in this complaint, I visited the Jackson Hewitt location at 9212 California Avenue in South Gate, California, which, on information and belief, is within Los Angeles County and the Central District of California.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Made this __14th__ day of April 2017 in the city of _____Cudahy_____ in Los Angeles County, California.

_____
LUIS LOMELI

419455

**CLASS ACTION COMPLAINT**